IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WILLIAM DUNLAP,

    Plaintiff,
v.                                            CASE NO. 5:15-cv-328-WTH-GRJ

CORIZON HEALTH CARE, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is ECF No. 19, Defendant Corizon Healthcare's Motion to Dismiss.[1] Plaintiff has filed a response in opposition to Defendant's motion. (ECF Nos. 26, 32.) The motion is, therefore, ripe for review. For the following reasons, it is recommended that the motion to dismiss be granted.

## I. Background

Plaintiff, a prisoner currently in the custody of the Florida Department of Corrections ("FDOC") at Central Florida Reception Center ("CFRC"), initiated this case on December 14, 2015, by filing a *pro se* complaint

---

[1] Plaintiff also named Gulf Correctional Institution ("Gulf CI") as a Defendant. (ECF No. 5.) The Court declined to serve Gulf CI, however, because state agencies and penal institutions are generally not considered legal entities subject to suit. *See, e.g., Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1343 (11th Cir. 2003).

under 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff subsequently filed an amended complaint on February 3, 2016, in which Plaintiff claims that Defendants failed to provide him adequate medical care which resulted in unnecessary pain and suffering. (ECF No. 5.)

Plaintiff says that on January 12, 2015, while incarcerated at Gulf CI, he discovered a painful infection on his left large toe related to diabetes. He contacted Sergeant Fowler, who then contacted Defendant Corizon Health Care ("Defendant") to tell them Plaintiff needed emergency care. The on-duty nurse told Sergeant Fowler that unless Plaintiff was bleeding to death or dying, Defendant would not see him.

Plaintiff subsequently signed up for sick call but was not seen for three or four days. He was then denied medical treatment and Vaseline for his feet. Plaintiff was not seen by a doctor for more than five months, during which time Plaintiff experienced pain and suffering. Plaintiff was later transferred to CFRC.

Plaintiff claims that Defendant failed to provide adequate medical care and caused him unnecessary pain and suffering while placing Plaintiff's health at risk. Plaintiff seeks compensatory and punitive damages, as well as an injunction ordering Defendant to provide

appropriate medical care.

## II. Motion to Dismiss

Defendant seeks to dismiss Plaintiff's complaint, arguing that Plaintiff failed to exhaust his administrative remedies prior to filing his complaint, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 24.) In support thereof, Defendant has provided a declaration of Alan McManus, Chief of Policy Management and Inmate Appeals at the FDOC. (ECF No. 19-1, ¶ 2 ("McManus Aff.").)

The FDOC's grievance procedure provides an inmate with a channel for the administrative settlement of a grievance. (*Id.* ¶ 7.) Generally, inmates must begin the grievance process by submitting an informal grievance to the designated staff member, who then forwards the informal grievance to the staff member responsible for the particular area of the problem. (*Id.* ¶ 8.) The informal grievance must be filed within 20 days of the date of the incident. (*Id.* at 36 (Fla. Admin Code R. 33-103.011(1)(a)).) The informal grievance shall be responded to within 10 days of the initial receipt date. (*Id.* at 18 (Fla. Admin. Code R. 33-103.005(4)).) An inmate may skip the informal grievance step, however, and immediately file a formal grievance for issues pertaining to various things, including medical

grievances. (*Id.* ¶ 9.)

To file a formal grievance at the second step of the procedure, the inmate must complete Form DC1-303, and file within the applicable time limits. (*Id.* ¶ 10.) If the formal grievance is an appeal of an informal grievance, the formal grievance must be received within 15 days of the date on which the informal grievance was responded to. (*Id.* at 36 (Fla. Admin Code R. 33-103.011(1)(b)).) If an informal grievance was not filed, the formal grievance must be filed within 15 days of the date on which the incident or action being grieved occurred. (*Id.*) The inmate must file the formal grievance with the warden, assistant warden, or deputy warden. (*Id.*) Following investigation and evaluation, a response shall be provided to the inmate stating whether the grievance is approved, denied, or being returned. (*Id.* ¶ 11.)

Where a formal grievance is of a medical nature, the grievance is directed to the institution's Chief Health Officer or clinical designee for response. (*Id.* ¶ 14.) That response is then provided to the warden, assistant warden, or deputy warden to ensure appropriate filing and routing. (*Id.*)

If, during the formal grievance procedure, an inmate feels that the

grievance has not been satisfactorily resolved, he may submit an appeal to the Office of the Secretary. (*Id.* ¶ 12.) An appeal must be received within 15 days from the date the response to the formal grievance was returned to the inmate. (*Id.* at 36 (Fla. Admin Code R. 33-103.011(1)(c)).) An inmate may also file a direct grievance with the Office of the Secretary if the grievance involves an emergency, reprisal, protective management issue, admissible reading material, release date calculations, banking issues, sexual abuse committed by the warden, or a violation of HIPAA. (*Id.* ¶ 13.) Direct grievances must be received within 15 days from the date on which the incident or action occurred. (*Id.* at 36 (Fla. Admin Code R. 33-103.011(1)(d)).)

If a grievance appeal of a medical nature is received by the Office of the Secretary, the grievance is forwarded to the Office of the Assistant Secretary for Health Services for investigation and response. (*Id.* ¶ 15.) After investigation and response, the grievance appeal is returned to the Office of the Secretary to ensure proper routing and filing. (*Id.*)

Records of all formal grievances and appeals filed by Florida inmates are maintained in a central database. (*Id.* ¶ 4.) A search of records contained in the grievance and appeal database from January 1, 2015,

through April 30, 2016, revealed that Plaintiff did not file a grievance concerning inadequate medical treatment by providers that he appealed to the Office of the Secretary. (*Id.* ¶ 16.) Accordingly, Defendant argues that Plaintiff has not properly exhausted his administrative remedies.

Plaintiff asserts, however, that he filed an informal grievance on approximately January 15, 2015. (ECF No. 26 at 1.) He says he never received a response and was eventually transferred to CFRC. (*Id.* at 2.) He also claims that Defendant and the FDOC have a practice of withholding grievances beyond the response time. (*Id.*)

### III.  Standard of Review

For the purposes of the motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *Jackson v. Okaloosa Cnty., Fla.,* 21 F. 3d 1532, 1534 (11th Cir. 1994). Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits. Fed. R. Civ. P. 10(c); *GSW, Inc. V. Long Cnty., Ga.,* 999 F.2d 1508, 1510 (11th Cir. 1993).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009), the Supreme

Court of the United States articulated a two-pronged approach for evaluating a motion to dismiss under Rule 12(b)(6): First, the court must determine what factual allegations in the complaint are entitled to a presumption of veracity; second, the court must then assess whether these facts give rise to an entitlement for relief. In determining whether factual allegations are entitled to the presumption of truth, the Court stated that it was not whether the facts are "unrealistic or nonsensical" or even "extravagantly fanciful," but rather it is their conclusory nature that "disentitles them to the presumption of truth." *Id.* at 681. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 546 (2007). "While the pleadings of *pro se* litigants are 'liberally construed,' they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. St. Lucie County School Bd.,* 399 F. App'x 563, 565 (11th Cir. 2010) (unpublished) (citations omitted) (applying the pleading standards of *Iqbal* and *Twombly* to a *pro se* complaint).[2]

---

[2] Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

*Case No: 5:15-cv-328-WTH-GRJ*

## IV.  Discussion

The PLRA requires a prisoner to exhaust all available administrative remedies before filing an action challenging prison conditions. "This requirement is a 'pre-condition to suit' that must be enforced even if the available administrative remedies are 'futile or inadequate.'" *Logue v. Pearson,* No. CV410-240, 2011 U.S. Dist. LEXIS 66950, at *2–3 (S.D. Ga. 2011) (citing *Harris v. Garner,* 190 F.3d 1279, 1285–86 (11th Cir. 2005))*.* Exhaustion is mandatory under the PLRA, and unexhausted claims are not permitted. *Jones v. Bock,* 549 U.S. 199, 211 (2002)*.*

Further, the PLRA's exhaustion requirement contains a procedural default component; prisoners must comply with the applicable deadlines, or good-cause standards for failure to comply, contained in the administrative grievance procedures. *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005). "'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating. . . . [T]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024–25 (7th Cir. 2002)).

To exhaust administrative remedies in Florida, a prisoner in FDOC custody must complete the administrative review process established under regulations promulgated by the Secretary of the FDOC. Fla. Stat. Ann. § 944.09(1)(d) ("The department has authority to adopt rules ... to implement its statutory authority. The rules must include rules relating to ... [g]rievance procedures which shall conform to 42 U.S.C. § 1997e."). Under the administrative review process established by the Secretary of the FDOC, a prisoner must: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Secretary of the FDOC. *Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code Ann. §§ 33-103.001–103.019*)*. Once a prisoner has completed this process, he has properly exhausted his administrative remedies. *Id.*

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter in abatement under Fed. R. Civ. P. 12 and, thus, is treated like a defense of lack of jurisdiction. *Bryant v. Rich*, 530 F.3d 1368, 1374, 1376 (11th Cir. 2008.) Accordingly, "[a] district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits

and the parties have a sufficient opportunity to develop the record." *Singleton v. Dep't of Corrections*, 323 F. App'x 783, 785 (11th Cir. 2009).

Deciding a motion to dismiss for failure to exhaust administrative remedies requires a two-step process as established in *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* at 1082; *Whatley v. Warden*, 802 F.3d 1205, 1211–12 (11th Cir. 2015) (at first *Turner* step, district court must accept plaintiff's facts as true "and make the exhaustion determination on [plaintiff's] view of facts;" appellate review of results of first step is *de novo*). If the complaint is not subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082; *Whatley*, 802 F.3d at 1213 (defendants' contention that plaintiff's exhibits were fabricated created a factual dispute that required explicit findings under the second *Turner* step;

such findings are subject to review on appeal for clear error).[3]

*Turner* also established, however, that an inmate is not required to grieve a "breakdown in the grievance process" because the PLRA only requires that a prisoner exhaust his "available administrative remedies." *Id.* at 1083–84 ("[I]t is possible for retaliation or the threat of retaliation to make administrative remedies unavailable to an inmate."). In the context of retaliation or threatened retaliation, the *Turner* court concluded:

> We conclude that a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

*Id.* at 1085. In order to successfully excuse a failure to exhaust, courts have generally concluded an inmate must allege more than just threats of retaliation, but instead must allege both such threats of retaliation as well

---

[3] In *Whatley*, the Eleventh Circuit reversed the dismissal of a complaint for failure to exhaust because the record did not reflect whether the district court dismissed the case on the first or second step of *Turner*, and thus, the Court could not evaluate whether the district court's conclusions should be reviewed under the *de novo* standard of the first *Turner* step or the "clear error" standard of the second *Turner* step. 802 F.3d at 1213. 6.

as the use of physical force against the inmate in response to the filing of grievances. *See, e.g., Hemphill v. New York*, 380 F.3d 680, 689 (2d Cir. 2004) (noting that if inmate was assaulted and threatened to keep him from complaining, exhaustion should be excused); *Kaba v. Stepp*, 458 F.3d 678, 684-86 (7th Cir. 2006) (exhaustion could be excused where prisoner was threatened with beating for filing grievances and threat was carried out).

Applying the requisite *Turner* analysis here, the factual allegations regarding Plaintiff's grievances in Defendant's motion to dismiss conflict with Plaintiff's response. Mr. McManus does not state whether Plaintiff filed any *informal or formal grievances* pertaining to inadequate medical treatment by medical providers. Instead, Mr. McManus merely asserts that Plaintiff "did not file a grievance concerning inadequate medical treatment by medical providers *which he appealed to the Office of the Secretary*." (McManus Aff. ¶ 16) (emphasis added). Based on Mr. McManus' statement, it is possible that Plaintiff filed an informal or formal grievance that was *approved* and, therefore, did not require appeal to the Office of the Secretary. In such case, an approved grievance would have negated the requirement for Plaintiff to appeal all the way up the ladder to the Office of the Secretary, and Plaintiff would have properly exhausted his

administrative remedies. Plaintiff claims that he filed an informal grievance on approximately January 15, 2015, but never received a response. If Plaintiff's informal grievance was approved, but simply never made its way back to Plaintiff, Plaintiff would have exhausted his administrative remedies. Accordingly, the Court must proceed to step two of the *Turner* analysis to make specific factual findings.

Under step two of the *Turner* analysis, the Court finds that Plaintiff did not file either an informal or formal grievance pertaining to inadequate medical treatment for his toe infection that was also approved. With respect to an informal grievance, Plaintiff has failed to provide a copy of this alleged informal grievance. Plaintiff also did not submit his response under penalty of perjury. *See White v. Tharp*, No. 06-cv-01179-EWN-KLM, 2008 WL 596159, at *10 (D. Colo. Feb. 29, 2008) (plaintiff failed to demonstrate exhaustion where he failed to provide copies of grievances that prison officials allegedly threw away or any other evidence demonstrating that the grievances were filed). Thus, his allegation regarding his January 15, 2015 informal grievance is not entitled to any evidentiary weight. And as to a formal grievance, Plaintiff does not even claim that he filed a formal grievance. Had either Plaintiff's alleged informal

grievance been approved (and merely never returned to Plaintiff), or had a formal grievance been filed and approved, Plaintiff would have received medical care or treatment sometime within the five-month period. According to his sworn complaint, however, he was denied medical care for five months after the initial infection.

The Court therefore concludes that Plaintiff did not properly exhaust administrative remedies prior to filing suit. Without either an approved informal or formal grievance, Plaintiff was required to file an appeal to the Office of the Secretary. The undisputed evidence demonstrates, however, that Plaintiff did not file an appeal to the Office of the Secretary regarding inadequate medical care within the required time-period—including after the five-month period. Accordingly, Plaintiff's allegation of filing an informal grievance on January 15, 2015, fails to overcome the other evidence demonstrating that Plaintiff did not properly exhaust his administrative remedies. *See Skipper v. Jones*, No. 3:12-cv-648-WHA, 2015 WL 5125778, at *5 (M.D. Ala. Aug. 31, 2015) (plaintiff's conclusory assertion that he wrote grievances that went unanswered failed to overcome Defendant's evidence showing grievance system was in place and that plaintiff failed to exhaust his administrative remedies).

Plaintiff's claim that Defendant and the FDOC withhold grievances beyond the response time does not excuse him from failing to exhaust administrative remedies. First, this allegation is unsworn and unsubstantiated. Second, even if Plaintiff's informal grievance was held by officials for longer than the 10-day response time, such would not negate Plaintiff's ability to file a formal grievance because Plaintiff still would have had fifteen days *from the date on which the informal grievance was responded to* in which he could file his formal grievance appealing the informal grievance. Moreover, Fla. Admin. Code r. 33-103.011(2) provides an extension of the time period to file a grievance or appeal at each level "when it is clearly demonstrated by the inmate . . . that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner." Thus, even if Plaintiff's appeal would have somehow been untimely based on a delayed response, Plaintiff nonetheless could have sought an extension of time. There is no evidence, however, that Plaintiff did so. *See Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (inmate failed to exhaust administrative remedies because he failed to file an out-of-time grievance pursuant to regulation allowing grievance coordinator to waive the time period for filing

a grievance based upon a showing of good cause).

Third, even if Plaintiff meant that Defendant and the FDOC purposely withheld his informal grievance beyond the fifteen-day period in which he had to appeal the informal grievance (by simply not returning it to Plaintiff), Plaintiff still should have proceeded to file a formal grievance. Fla. Admin. Code R. 33-103.011(4) states:

> The time limit for responding to grievances and appeals may be extended for a reasonable period agreeable to both parties if the extension is agreed to in writing by the inmate. Unless the grievant has agreed in writing to an extension, expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process. If this occurs, the complainant must clearly indicate this fact when filing at the next step.

Plaintiff, therefore, should have filed a formal grievance after the response period expired. Because he did not, he failed to properly exhaust administrative remedies.

Fourth, because Plaintiff's issue was one of an ongoing medical nature, he could have nonetheless re-initiated the grievance process at any other point within the five-month period by filing a formal grievance. Notably, Plaintiff's claim does not pertain solely to January 12, 2015. He also claims that he failed to receive treatment and medical care for the following five months. Plaintiff could have initiated the grievance procedure

by filing a formal grievance for failing to receive medical care following the initial infection at any point during those five months. In addition, transfer to CFRC would not have somehow affected Plaintiff's ability to grieve the alleged lack of medical care at Gulf CI. In sum, Plaintiff did not properly exhaust his administrative remedies prior to filing his complaint in federal court.

Finally, Plaintiff does not claim that retaliation or threatened retaliation prevented him from properly exhausting prior to filing suit. His failure to exhaust, therefore, cannot be excused. Plaintiff was required to exhaust all administrative remedies available to him pursuant to the PLRA and his failure to do so requires that his claims be dismissed.

## V.  Recommendation

Accordingly, it is respectfully **RECOMMENDED** that:

1. Defendant's motion to dismiss, ECF No. 19, should be **GRANTED** for failure to exhaust administrative remedies; and

2. The case should be closed.

**IN CHAMBERS** this 1st  day of February, 2017.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**